IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RUTH BUZI, Ph.D.<br>　　　Plaintiff | § § § | |
| v. | § § | CIVIL ACTION NO. 4:18-cv-3753 |
| BAYLOR COLLEGE OF MEDICINE<br>　　　Defendant | § § § | JURY DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiff, Ruth Buzi, Ph.D., and files this Complaint, complaining of Baylor College of Medicine ("Baylor" or "Defendant") and for her cause of action, shows the Court as follows:

### I.
### INTRODUCTION

1. This action seeks equitable relief, economic damages, compensatory damages, punitive damages, attorneys' fees, expert witness fees, taxable costs of court, and prejudgment and post-judgment interest for Defendant's violations of Title VII.

2. Plaintiff alleges that she is being subjected to national origin discrimination, as well as retaliation because of her complaints of national origin discrimination, in violation of Title VII.

3. Plaintiff demands a jury on all issues triable to a jury.

### II.
### PARTIES

4. Ruth Buzi, Ph.D., is a resident of Harris County, Texas.

5. Defendant, Baylor College of Medicine, is a Texas Nonprofit Corporation doing business in the State of Texas. Baylor College of Medicine may be served with a Summons and Complaint through its registered agent for service, James Banfield, at One Baylor Plaza, Suite 106A, Houston, Texas 77030.

6. Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## III.
## JURISDICTION AND VENUE

7. This action is brought pursuant to Title VII, 42 U.S.C. § 2000e, *et seq*.

8. This Court has subject matter jurisdiction over all claims in this action under 28 U.S.C. §§ 1331 and 1367.

9. This Court has personal jurisdiction over Defendant since Defendant is actively engaged in business in Texas.

10. Defendant has sufficient minimum contacts with Texas to establish both specific and general jurisdiction over them in Texas.

11. Venue is proper in this District since the substantial part, if not all, of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## IV.
## PROCEDURAL REQUISITES

12. On or about July 15, 2016, Dr. Buzi filed a charge of national origin discrimination and retaliation against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division.

13. Dr. Buzi subsequently filed Amended Charges of national origin discrimination and retaliation with the EEOC and the Texas Workforce Commission Civil Rights Division.

14. Upon Dr. Buzi's Request, on or about July 18, 2018, the EEOC issued a Notice of Right to Sue on the Charges of Discrimination filed by Dr. Buzi.

15. This lawsuit has been filed within 90 days of receipt of the Right to Sue issued by the EEOC.

16. All conditions precedent to the filing of this suit have been met.

## V.
## FACTS

**A. Dr. Buzi Begins Her Employment with Baylor College of Medicine**

17. On May 3, 1993, Ruth Buzi was hired by Baylor College of Medicine ("Baylor" or "BCM") as a part-time Social Worker.

18. At the time she was hired, Dr. Buzi held a Bachelor degree in Social Work.

19. Dr. Buzi is from Israel.

20. In addition to having her degree, Dr. Buzi had acquired ten years of experience working as a social worker in her home country of Israel.

21. In addition, Dr. Buzi had just graduated with a Master's degree in Social Work in 1993.

22. Despite Baylor's policy, when she was hired, Dr. Buzi was paid less than half of

what was common for social workers in 1993.

**B.    Dr. Buzi is Promoted to Director of Social Services**

23.    In 1996, Dr. Buzi became a full-time Social Worker.

24.    In 2002, Dr. Buzi obtained her Ph.D. in Behavioral Science and was promoted to the position as the Director of Social Services and Assistant Professor.

25.    Dr. Buzi was later promoted to an Associate Professor.

26.    During her over 20 years with Baylor College of Medicine, Dr. Buzi has always received outstanding performance reviews.

27.    In addition, Dr. Buzi has obtained federal and state funding for her academic research.

28.    Dr. Buzi's work has been published in scholarly journals and she is well known in the local and the national community for her contributions to the field of adolescent health.

**C.    Dr. Buzi's Supervisor Discriminates Against Her Because of Her National Origin**

29.    Since the time that Dr. Buzi began her employment, Dr. Peggy Smith, Director of the Teen Health Clinic, has displayed hostile behavior towards Dr. Buzi because of her Israeli national origin.

30.    Dr. Smith would often refer to Dr. Buzi as an "immigrant."

31.    Dr. Smith made fun of Dr. Buzi's accent in conversations with her coworkers.

32.    Dr. Smith regularly refers to people by their country of origin and/or their religion.

33.    Dr. Buzi is paid less than other similarly situated workers who are not of Israeli national origin.

34.    Dr. Buzi expressed to Dr. Smith that she was offended by Dr. Smith's conduct.

35. Dr. Buzi expressed her desire to be treated with respect and equality.

**D.   Dr. Smith Retaliates Against Dr. Buzi Because She Opposed Dr. Smith's Conduct**

36. In response to Dr. Buzi request for the conduct to stop and to be treated with respect and equality, Dr. Smith yelled at Dr. Buzi.

37. On one occasion in 2014, Dr. Smith yelled at Dr. Buzi so loudly in her office that a security officer from the next office knocked on the door to see if any help was needed.

38. Dr. Buzi was humiliated by the way Dr. Smith treated her after she asked for Dr. Smith's conduct to stop and for her to treat Dr. Buzi with respect and equality.

39. After disagreements between Dr. Buzi and Dr. Smith, Dr. Smith encouraged other employees to refrain from engaging in conversations with Dr. Buzi.

40. Dr. Smith has also excluded Dr. Buzi from projects in order to punish Dr. Buzi.

41. Dr. Smith has compromised Dr. Buzi's academic integrity by expecting Dr. Smith to be listed as an author on research projects that Dr. Buzi started, maintained, oversaw, and successfully completed, even though Dr. Smith failed to make a significant contribution to the manuscript.

42. Dr. Smith has openly insulted Dr. Buzi's intelligence by stating in front of others that "something is wrong with Dr. Buzi mentally because she repeats things twice."

**E.   Dr. Buzi Seeks Assistance Through the Employee Assistance Program**

43. In February of 2014, Dr. Smith's behavior became so hostile that Dr. Buzi requested information through the Employee Assistance Program to select a psychologist to address Dr. Buzi's anxiety and work-related stress.

44. Dr. Buzi set an appointment with Dr. Paul Damin, a psychologist, to see if there was something that Dr. Buzi was doing to trigger Dr. Smith's behavior towards her.

45. Dr. Buzi became depressed after she was subjected to the hostile and aggressive behavior by Dr. Smith.

46. Dr. Buzi felt scared to defend herself out of fear of retaliation by Dr. Smith and Baylor College of Medicine.

47. Dr. Smith frequently yelled at Dr. Buzi when she tried to defend herself.

48. At Dr. Buzi's first session with Dr. Damin, after describing to Dr. Damin her struggles at work, Dr. Damin suggested that Dr. Buzi's experiences were consistent with workplace bullying.

49. Dr. Buzi continued to see Dr. Damin and underwent treatment for emotional exhaustion, anxiety, and work related stress for several sessions in 2014 and then again in 2017.

50. Dr. Smith continued to go out of her way to make derogatory comments about immigrants that made Dr. Buzi feel uncomfortable.

51. Dr. Smith blocked Dr. Buzi from becoming a tenured faculty, claiming it would require Dr. Buzi to secure her own salary.

52. In fact, Dr. Buzi has been involved in grant writing and fundraising throughout her employment at Baylor.

53. Dr. Smith blocked Dr. Buzi's advancement to a full professor by excluding Dr. Buzi's full accomplishments from an email she sent to a promotion committee member.

54. Dr. Smith also discouraged Dr. Buzi from applying for a Fulbright & Jaworski Research Award.

**F.     Dr. Buzi Formally Complains of National Origin Discrimination**

55. On January 28, 2016, Dr. Buzi filed an internal complaint of discrimination about Dr. Smith.

56. After Dr. Buzi filed her complaint, Baylor launched an external investigation into the discrimination claims Dr. Buzi made against Dr. Smith.

57. After Dr. Buzi filed her formal complaint of national origin discrimination, Dr. Smith further retaliated against her.

58. Dr. Smith denied Dr. Buzi permission to travel, even though Dr. Smith granted Dr. Buzi's younger and less experienced counterparts the opportunity to travel without hesitation.

59. Dr. Buzi requested permission to attend a conference in Austin.

60. The conference lasted only two days, such that Dr. Buzi would return to work on the third day.

61. Dr. Buzi's request was denied because her designated funds were frozen and supposedly the department did not have any extra funds to send her to Austin.

62. Yet, Dr. Smith gave another employee permission to attend a conference in Washington D.C. for four days, all expenses paid.

**G.   The Investigator Substantiates Dr. Buzi's Complaint and Baylor Concludes that Dr. Smith Retaliated Against Dr. Buzi**

63. As part of the investigation into Dr. Buzi's complaint, several employees were interviewed.

64. The investigator assigned to Dr. Buzi's complaint told Dr. Buzi that many of her claims against Dr. Smith were substantiated.

65. However, at the end of the investigation, Dr. Buzi was told that there was no concurring evidence of national origin discrimination.

66. However, Dr. Buzi was also told that there was evidence that Dr. Smith was retaliating against Dr. Buzi for filing a discrimination complaint with Human Resources.

7

67. Dr. Buzi was never given any details to explain the decision.

68. No resolution was put in place to eliminate the hostile work environment to which Dr. Buzi was subjected every day.

69. The environment has affected Dr. Buzi's productivity and self-respect.

70. On May 9, 2016, Dr. Buzi met with James Banfield and Sandy Dunn to discuss her complaint.

71. At that time, Dr. Buzi expressed her desire to file a formal grievance, and have her complaint heard by the Grievance Committee.

72. However, Dr. Buzi was never given the opportunity to file a formal grievance.

73. Despite the fact that Baylor determined that Dr. Smith retaliated against Dr. Buzi, Dr. Smith was permitted to transfer and remain employed by Baylor.

**H.     Dr. Buzi is Demoted Because of Her Complaint**

74. On December 7, 2016, Dr. Buzi met with Dr. Aagaard, the new Chief Operating Officer, and Michele Birsinger, Administrator at the OB/GYN Department.

75. During the meeting, Dr. Aagaard became angry, and complained that "we use the HR department more than any other department."

76. Dr. Buzi was threatened that if she did not stop complaining to HR, the clinics would be dismantled.

77. Dr. Smith subsequently eliminated funding for Dr. Buzi's position from the budget submitted to the state although part of Dr. Buzi's salary is paid for by this source.

78. As a result of this action, Dr. Buzi was placed in an approved position as a social worker/patient educator.

79. As a result, in that position, Dr. Buzi is expected to perform patient education

tasks, making clear that Dr. Buzi's new position is a demotion.

80. It is humiliating that Dr. Buzi is now expected to function in this capacity as a result of Dr. Smith's actions.

81. Dr. Smith excluded Dr. Buzi from a collaboration with the University of Texas Health Science Center related to males.

82. Mr. David McBride, one of Dr. Buzi's employees at that time, brought to Dr. Buzi's attention that he participated in a meeting with Dr. Kim Johnson on that research project.

83. Dr. Smith intentionally excluded Dr. Buzi from the conversation and instead approached her employee directly about participating.

84. In fact, Dr. Johnson was surprised that Dr. Buzi was not present at the meeting.

85. Dr. Buzi's failure to be invited to the meeting damaged her reputation in the community.

I. **Baylor Removes Dr. Buzi from Project Bootstrap and Dismantles Dr. Buzi's Remaining Projects**

86. Dr. Smith has asked board members of the Foundation for Teen Health, a fundraising arm of the Baylor College of Medicine Teen Health Clinic, to vote Dr. Buzi out of managing Project Bootstrap, a project that assists patients in obtaining a stipend for their career development.

87. Dr. Buzi had started and managed the project for years.

88. As such, that action put Dr. Buzi in a negative light, and defamed her reputation in the community.

89. Dr. Buzi was completely removed from managing Project Bootstrap, which she had managed for years and published a manuscript on it.

90. Centering Pregnancy, a prenatal program that Dr. Buzi managed for years, was

intentionally dismantled by Dr. Smith and BCM leadership by redirecting funds to other projects.

91. This action jeopardized funds that Dr. Buzi had from DePelchin.

92. The DePelchin project had one more year of funding that was terminated.

93. Ending the DePelchin project reflects very badly on Dr. Buzi in the community.

94. Ending Centering Pregnancy also affects funds for other employees that Dr. Buzi supervises.

95. There were funds available from the University of Texas Health Science Center for a project to promote the use of effective contraceptives.

96. Dr. Buzi initiated such a program before and, as it was related to patient education, Dr. Buzi should have been involved.

97. However, Dr. Buzi was completely excluded from the project despite her expertise and experience on that topic.

98. Dr. Buzi knows the staff at the University of Texas, and knows that the staff expected Dr. Buzi to be a part of the project.

99. Dr. Buzi inexplicably not being a part of the project reflected poorly on Dr. Buzi.

100. Dr. Smith excluded Dr. Buzi from a collaboration initiated by Houston Endowment to address maternal mortality and morbidity.

101. As a Steering Committee member, Dr. Smith recommended one of the social workers that Dr. Buzi supervised instead of recommending Dr. Buzi.

102. Once again, Dr. Smith's action was humiliating and damaged Dr. Buzi's reputation in the community.

**J.   Dr. Buzi Files an Internal Complaint of Retaliation**

103. In July 2017, Dr. Buzi filed an internal complaint regarding her losing

management of Project Bootstrap, and defamation to which she was being subjected.

104. The Human Resources Department convened a Grievance Committee made up of five faculty members to hear Dr. Buzi's complaint.

105. The report of the Grievance Committee indicated Dr. Buzi must be given the opportunity to contribute, and be appropriately credited in all information and publications related to her work and involvement, including that of Project Bootstrap.

106. The OB/GYN department failed to implement the recommendations and did not reinstate Dr. Buzi as the manager of Project Bootstrap.

107. Dr. Buzi was told by Ms. Sandy Dunn from HR that the reason the recommendations were not implemented is because Dr. Buzi questioned whether Mr. McBride has a master degree.

108. The failure to adhere to the Grievance Committee's Report again demonstrates that Dr. Buzi's rights were consistently ignored and that Dr. Buzi is being punished for bringing forward concerns about illegal practices.

109. Dr. Buzi has been demoted on the organizational chart and many of her job responsibilities were removed and given to other employees (*e.g.,* Bootstrap, Outreach, Web-based, staff development).

110. Dr. Buzi has also been marginalized and removed from many activities she supported in the past.

**K.** **Baylor Removes Dr. Buzi's Husband as an IT Consultant**

111. Dr. Buzi's husband, Mr. Sam Buzi, was the Information Technology (IT) independent consultant for the Baylor College of Medicine Teen Health Clinic (BTHC) for over 15 years.

112. In November 2017, Mr. Buzi was removed from his role as the IT consultant and BCM hired a new employee.

113. Mr. Sinclair claimed the aim was to integrate BTHC's IT with the Baylor College of Medicine IT department.

114. The reason given for the removal of Mr. Buzi was false.

115. Mr. Buzi should have been considered for the new position integrating BTHC's IT with the Baylor College of Medicine IT department

116. Mr. Buzi was not considered for the new position integrating BTHC's IT with the Baylor College of Medicine IT department.

**L.     Baylor Continues to Retaliate Against Dr. Buzi**

117. In January 2018, Dr. Buzi was given a performance evaluation in which her professionalism, integrity and research accomplishments were rated as below expectation.

118. Dr. Buzi's performance evaluation was false and inconsistent with her actual job performance, as well as previous performance evaluations in which Dr. Buzi's performance was accurately rated as exceeded expectations.

119. Dr. Buzi complained to the department chair about the false and unwarranted evaluation and requested that it be voided.

120. Dr. Buzi never received a reply to her request.

121. The new administrator, Tom Sinclair, is paid significantly more than Dr. Buzi

122. Tom Sinclair holds only a Bachelor's degree.

123. Tom Sinclair has no training or expertise in health care.

124. Dr. Smith returned to her role as the CEO of the Teen Health Clinic.

125. In that role, Dr. Smith now has opportunities to sabotage Dr. Buzi's work directly.

126. Dr. Smith secured a letter from Precinct One Commissioner, modifying the terms of the North East Adolescent Project without seeking input from Dr. Buzi.

127. The North East Adolescent Project is a program Dr. Buzi managed for many years.

128. This followed a $25,000 donation Dr. Smith made to the Commissioner from the Foundation for Teen Health funds.

129. Such a donation is inconsistent with the Foundation for Teen Health mission.

130. At a leadership meeting on August 7, 2018, Dr. Smith exhibited rage towards Dr. Buzi in a discussion regarding funds Dr. Buzi obtained to improve the environment at two Teen Health Clinic sites.

131. Dr. Buzi complained to leadership about the behavior Dr. Smith exhibited towards her.

132. Dr. Buzi has received no response to her latest complaint about Dr. Smith's treatment toward her.

## VI.
## NATIONAL ORIGIN DISCRIMINATION

133. Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

134. Plaintiff is from Israel and within a class protected by Title VII.

135. As described above, Plaintiff is being subjected to different terms and conditions of employment by Defendant because of her national origin.

136. Direct and/or circumstantial evidence exists showing that Defendant intended to discriminate against Plaintiff because of her national origin, in violation of Title VII, 42 U.S.C. §§ 2000e *et seq*.

137. As a result of Defendant's actions, Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in the probability will continue to suffer in the future.

138. Therefore, Plaintiff seeks damages against Defendant for violations of Title VII.

139. Plaintiff seeks all available damages from Defendant that are allowed under the relevant statutes.

140. Plaintiff suffered emotional distress and mental anguish as a result of Defendant's conduct and Plaintiff seeks damages for same.

141. Plaintiff also seeks economic losses for the lost wages and benefits suffered by her as a result of Defendant's conduct.

142. Plaintiff also demands attorney's fees, expert witness fees, pre-judgment and post-judgment interest, costs of court, and any other damages allowed.

## VII.
## RETALIATION

143. Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

144. As described above, Plaintiff is being subjected to different terms and conditions of employment by Defendant because her complaint of discrimination made during her employment.

145. Direct and/or circumstantial evidence exists showing that Defendant intended to discriminate against Plaintiff because of her discrimination complaint, in violation of Title VII, 42 U.S.C. §§ 2000e *et seq*.

146. As a result of Defendant's actions, Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in the probability will continue to suffer in the future.

147. Therefore, Plaintiff seeks damages against Defendant for violations of Title VII.

148. Plaintiff seeks all available damages from Defendant that are allowed under the relevant statutes.

149. Plaintiff suffered emotional distress and mental anguish as a result of Defendant's conduct and Plaintiff seeks damages for same.

150. Plaintiff also seeks economic losses for the lost wages and benefits suffered by her as a result of Defendant's conduct.

151. Plaintiff also demands attorney's fees, expert witness fees, pre-judgment and post-judgment interest, costs of court, and any other damages allowed.

## VIII.
## DAMAGES

152. Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

153. Dr. Buzi seeks all available damages from Defendant that are allowed under the relevant statutes.

154. Dr. Buzi also seeks economic losses for the lost wages and benefits suffered by her as a result of Defendant's conduct.

155. Dr. Buzi also seeks equitable relief, including restoration of her job duties, responsibilities and titles.

156. Dr. Buzi has suffered emotional distress and mental anguish as a result of Baylor's conduct and Dr. Buzi seeks damages for same.

157. Dr. Buzi also demands attorney's fees, expert witness fees, pre-judgment and post-judgment interest, costs of court, and any other damages allowed.

## IX.
## JURY DEMAND

158. Dr. Buzi requests a trial by jury on all issues triable by a jury in this case.

## X.
## RELIEF REQUESTED

159. Dr. Buzi respectfully prays that she be granted judgment for the following relief:

   a. For actual and compensatory damages for the period of time provided by law, including appropriate backpay or other compensation, and reimbursement for lost pension, insurance, and all other benefits;

   b. For equitable relief, including restoration of Dr. Buzi's job duties, responsibilities and titles;

   c. For compensatory damages and other damages as allowed by law;

   d. For attorneys' fees;

   e. For expert witness fees incurred in the preparation and prosecution of this action;

   f. For pre-judgment and post-judgment interest as allowed by law;

   g. For costs of court, costs of prosecuting this claim; and

   h. For such other and further relief to which Dr. Buzi may be entitled under the relevant statutes or justly entitled.

WHEREFORE, PREMISES CONSIDERED, Dr. Buzi prays that after trial by jury she be awarded the relief requested above, and any other such further relief whether at law or in equity to which she may show herself justly entitled.

Respectfully submitted,

AHMAD & CAPODICE, PLLC

/s/ Nasim Ahmad
Nasim Ahmad
State Bar No. 24014186
nahmad@ahmad-capodice.com
24900 Pitkin, Suite 300
The Woodlands, Texas 77386
Telephone: (832) 767-3207
Telecopier: (281) 864-4379

ATTORNEYS FOR PLAINTIFF
RUTH BUZI